# 24-2303

## United States Court of Appeals
## for the Second Circuit

JENNIE LANDSMAN, AS PARENT AND NATURAL GUARDIAN OF
J.L. AND INDIVIDUALLY,

*Plaintiff-Appellant,*

*against*

DAVID C. BANKS, IN HIS OFFICIAL CAPACITY AS CHANCELLOR
OF THE NEW YORK CITY DEPARTMENT OF EDUCATION, NEW
YORK CITY DEPARTMENT OF EDUCATION,

*Defendants-Appellees.*

On Appeal from the United States District Court
for the Southern District of New York

## BRIEF FOR DEFENDANTS-APPELLEES

RICHARD DEARING
DEBORAH A. BRENNER
CHASE H. MECHANICK
*of Counsel*

March 10, 2025

MURIEL GOODE-TRUFANT
*Corporation Counsel*
*of the City of New York*
Attorney for
Defendants-Appellees
100 Church Street
New York, New York  10007
212-356-0841
cmechani@law.nyc.gov

## TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES.............................................................iii

PRELIMINARY STATEMENT..........................................................1

ISSUES PRESENTED.....................................................................2

STATEMENT OF THE CASE..........................................................2

    A. The Individuals with Disabilities Education Act and retroactive tuition reimbursement for private-school tuition ...............................................................................2

    B. J.L.'s individualized education program and the mother's unilateral withdrawal of the child from public school without providing written ten-day notice ..............5

    C. The administrative proceedings .......................................7

        1. The mother's due process complaint and evidentiary submissions to the IHO ...............................................7

        2. The IHO's denial of reimbursement for the 2021-22 school year due to Landsman's failure to prove written ten-day notice...................................................9

        3. The SRO's determination............................................10

    D. The district court's decision upholding the SRO's determination..................................................................11

STANDARD OF REVIEW AND SUMMARY OF ARGUMENT .....13

ARGUMENT.................................................................................15

    THE DISTRICT COURT CORRECTLY GRANTED THE DEPARTMENT SUMMARY JUDGMENT

i

## TABLE OF CONTENTS (cont'd)

**Page**

A. The district providently denied reimbursement based on the mother's undisputed failure to comply with the ten-day notice requirement....................................................16

B. Landsman's counterarguments are unavailing. ..............22

   1. Landsman misconstrues the *Burlington-Carter* framework....................................................22

   2. The district court did not err by treating Landsman's failure to provide notice as dispositive. ......................24

   3. The district court did not improperly defer to the IHO or SRO....................................................27

   4. Landman's failure to provide adequate notice was not harmless error....................................................28

C. Landsman is not entitled to reimbursement for related services from the 2021-22 school year. ...........................31

CONCLUSION ....................................................33

CERTIFICATE OF COMPLIANCE ................................34

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*A.P. v. N.Y.C. Dep't of Educ.*,
  2024 U.S. App. LEXIS 4302 (2d Cir. Feb. 26, 2024) ...................... 25

*Ashland Sch. Dist. v. Parents of Student E.H.*,
  587 F.3d 1175 (9th Cir. 2009) ....................................................... 18

*Berger v. Medina City Sch. Dist.*,
  348 F.3d 513 (6th Cir. 2003) .................................................... 18, 24

*C.F. v. N.Y.C. Dep't of Educ.*,
  746 F.3d 68 (2014) ................................................................... 25, 30

*C.H. v. Cape Henlopen Sch. Dist.*,
  606 F.3d 59 (3d Cir. 2010) ............................................................ 18

*Cutler v. Stop & Shop Supermarket Co., L.L.C.*,
  513 F. App'x 81 (2d Cir. Mar. 7, 2013) ........................................... 6

*Debique v. Garland*,
  58 F.4th 676 (2d Cir. 2023) ...................................................... 15, 21

*Doe v. E. Lyme Bd. of Educ.*,
  790 F.3d 440 (2d Cir. 2015) .......................................................... 14

*Ferreira v. Aviles-Ramos*,
  120 F.4th 323 (2d Cir. 2024) ................................................*passim*

*Florence Cty. Sch. Dist. Four v. Carter*,
  510 U.S. 7 (1993) ........................................................................ 3, 4

*Forest Grove Sch. Dist. v. T.A.*,
  557 U.S. 230 (2009) ................................................ 17, 19, 22, 25

*Frank G. v. Bd. of Educ.*,
  459 F.3d 356 (2d Cir. 2006) ...................................................... 18, 24

*Gagliardo v. Arlington Cent. Sch. Dist.*,
  489 F.3d 105 (2d Cir. 2007) .......................................................... 13

*Gordon v. Softech Int'l, Inc.*,
  726 F.3d 42 (2d Cir. 2013) ............................................................ 15

*Greenland Sch. Dist. v. Amy N.*,
  358 F.3d 150 (1st Cir. 2004) ..................................................... 19, 29

iii

## TABLE OF AUTHORITIES (cont'd)

**Page(s)**

*J.S. v. Scarsdale Union Free Sch. Dist.,*
  826 F.Supp.2d 635 (S.D.N.Y. 2011) ............................................... 19

*Leggett v. Dist. of Columbia,*
  793 F.3d 59 (D.C. Cir. 2015) ......................................................... 18

*Lore v. City of Syracuse,*
  670 F.3d 127 (2d Cir. 2012) ......................................................... 20

*Loren F. v. Atlanta Ind. Sch. Sys.,*
  349 F.3d 1309 (11th Cir. 2003) ............................................... 18, 29

*M.B. v. N.Y.C. Dep't of Educ.,*
  2015 U.S. Dist. LEXIS 145844 (S.D.N.Y. Oct. 27, 2015) .............. 30

*M.C. v. Voluntown Bd. of Educ.,*
  226 F.3d 60 (2d Cir. 2000) ................................................. 15, 18, 29

*M.G. v. Dist. of Columbia,*
  246 F.Supp.3d 1 (D.D.C. 2017) ............................................... 28, 29

*M.H. v. N.Y.C. Dep't of Educ.,*
  685 F.3d 217 (2d Cir. 2012) ......................................................... 25

*M.W. v. N.Y.C. Dep't of Educ.,*
  725 F.3d 131 (2d Cir. 2013) ......................................................... 13

*Ms. M. v. Portland Sch. Comm'n,*
  360 F.3d 267 (1st Cir. 2004) ........................................................ 24

*R.E. v. N.Y.C. Dep't of Educ.,*
  694 F.3d 167 (2d Cir. 2012) ........................................................... 3

*R.H. v. Plano Indep. Sch. Dist.,*
  607 F.3d 1003 (5th Cir. 2010) ............................................... 18, 24

*Reyes ex rel. R.P. v. N.Y.C. Dep't of Educ.,*
  760 F.3d 211 (2d Cir. 2014) ......................................................... 25

*Rafferty v. Cranston Pub. Sch. Comm'n,*
  315 F.3d 21 (1st Cir. 2002) ..................................................... 18, 24

*Sch. Comm. of Town of Burlington v. Dep't of Educ. of
  Mass.,*
  471 U.S. 359 (1985) ..................................................................... 3, 4

iv

# TABLE OF AUTHORITIES (cont'd)

**Page(s)**

*T.K. v. N.Y.C Dep't of Educ.*,
   810 F.3d 869 (2d Cir. 2016) ........................................................ 25

*W.D. v. Watchung Hills Reg'l High Sch. Bd. of Educ.*,
   602 F. App'x 563 (3d Cir. Mar. 6, 2015) ..................................... 24

*Walczak v. Florida Union Free Sch. Dist.*,
   142 F.3d 119 (2d Cir. 1998) ........................................................ 29

*Ziparo v. CSX Transp., Inc.*,
   15 F.4th 153 (2d Cir. 2021) ........................................................ 17

**Statutes**

20 U.S.C. § 1400 ............................................................................... 2, 3

20 U.S.C. § 1401 .................................................................................. 3

20 U.S.C. § 1412 ...........................................................................*passim*

20 U.S.C. § 1414 .................................................................................. 3

20 U.S.C. § 1415 ............................................................................... 4, 5

Fed. R. Evid. 1002 .............................................................................. 6

N.Y. Educ. L. § 4404 ....................................................................... 4, 5

**Rules**

Fed. R. Evid. 1002 .............................................................................. 6

## PRELIMINARY STATEMENT

In this action under the Individuals with Disabilities Education Act (IDEA), appellant Jennie Landsman, the mother of a student with disabilities, sought public reimbursement for her son's private schooling at the International Institute for the Brain ("iBrain"). An impartial hearing officer (IHO) granted Landsman reimbursement for the entire 2022-23 school year. But the IHO denied her reimbursement for the roughly four months that her child's attended iBrain in 2022, since she failed to timely notify the New York City Department of Education (the "Department") of her intent to enroll him in private school during that year at public expense. On administrative appeal, a state review officer (SRO) rejected Landsman's belated attempt to introduce evidence of prior written notice—which, in any event, continued to fall short of statutory requirements—and affirmed. Recognizing, as the hearing officers did, that Landsman's unilateral withdrawal of her child without prior written notice was unreasonable, the U.S. District Court for the Southern District of New York (Caproni, U.S.D.J.) held that equitable considerations did not support reimbursement for the 2021-22 school year.

This Court should affirm. The district court providently exercised its discretion by denying tuition reimbursement for the 2021-22 school year, as there is no dispute that plaintiff failed to give ten business days'

written notice to the Department of her intent to enroll her child in private school for that year. Under the IDEA, "reimbursement … may be reduced or denied" when such notice is not given. And this Court has repeatedly reaffirmed that reimbursement may be precluded where, as here, a parent unilaterally enrolls the child in private schooling without furnishing adequate notice. It was not error for the district court to do what the IDEA's text and this Court's longstanding precedents allow, and none of Landsman's counterarguments demonstrate otherwise.

## ISSUES PRESENTED

Did the district court providently exercise its discretion by denying reimbursement for the four-month portion of the 2021-22 school year when the child attended private school, where it was undisputed that Landsman failed to demonstrate her compliance with the IDEA's ten-day notice requirement?

## STATEMENT OF THE CASE

### A. The Individuals with Disabilities Education Act and retroactive tuition reimbursement for private-school tuition

Congress enacted the IDEA "to ensure that all children with disabilities have available to them a free appropriate public education  that emphasizes special education and related services designed to meet their unique needs." 20 U.S.C. § 1400(d)(1)(A). The statute entitles

2

children with disabilities to a free and appropriate public education (FAPE), including special education and services provided at public expense at a suitable school, in accordance with each qualifying student's individualized education program (IEP). *See id.* §§ 1400(d)(1)(A), 1401(9). The IEP is a collaboratively developed written statement of the child's educational performance, with annual and short-term objectives for improvement and a description of the specially designed instruction and services that will enable the child to meet those objectives. *See R.E. v. N.Y.C. Dep't of Educ.*, 694 F.3d 167, 175 (2d Cir. 2012); 20 U.S.C. § 1414(d)(1)(A)(i).

Parents dissatisfied with this recommended program can unilaterally enroll their child in a private school, but they "do so at their own financial risk." *Sch. Comm. of Town of Burlington v. Dep't of Educ. of Mass.*, 471 U.S. 359, 374 (1985). In a pair of cases, the Supreme Court clarified that a district court may reimburse parents for private school tuition, *see id.* at 370, but only if it finds that (1) the school district's recommendation was inappropriate to the child's needs; (2) the parent's alternative placement was appropriate; and (3) the equities support reimbursement, *see Florence Cty. Sch. Dist. Four v. Carter*, 510 U.S. 7, 12–16 (1993). This three-step test for reimbursement is known as the *Burlington-Carter* test.

After *Burlington* and *Carter* were decided, Congress amended the IDEA by adding a new clause titled "Limitation on reimbursement." 20 U.S.C. § 1412(a)(10)(C)(iii); *see* P.L. 105-17, Title I, § 101, 111 Stat. 37 (1997). Under this provision, reimbursement "may be reduced or denied" unless the parent notifies the school district that they reject the child's proposed IEP and intend to enroll the child in a private school at public expense. 20 U.S.C. § 1412(a)(10)(C)(iii) & (I)(aa), (bb). This notice must be in writing and must be served at least ten business days before the child's removal from public school. *See* § 1412(a)(10)(C)(iii)(I)(bb). The statute identifies only a few circumstances in which courts may (or must) excuse a parent's failure to provide this notice. *See id.* § 1412(a)(10)(C)(iv). For example, courts cannot deny reimbursement for failure to provide the ten-day notice if complying with this requirement would likely result in physical harm to the child. *See id.* § 1412(a)(10)(C)(iv)(I)(cc).

To begin the process of seeking tuition reimbursement, a parent files a due process complaint. *See* 20 U.S.C. § 1415(b)(6)(A); N.Y. Educ. L. § 4404(1)(a). In New York State, the complaint triggers a two-tier administrative process. At the first stage, an IHO conducts a formal hearing and makes findings of fact. *See* N.Y. Educ. L. § 4404(1)(a). At the second stage, a party may appeal the IHO's determination to an SRO,

whose decision is final. *See* 20 U.S.C. § 1415(i)(1); N.Y. Educ. L. § 4404(2), (3). A party aggrieved by the SRO's decision may then seek judicial review. *See* 20 U.S.C. § 1415(i)(2).

### B. J.L.'s individualized education program and the mother's unilateral withdrawal of the child from public school without providing written ten-day notice

Plaintiff-appellant Jennie Landsman is the mother of J.L., a non-verbal and non-ambulatory student with significant disabilities (Joint Appendix ("A") 50-51). J.L. attended Stepping Stones Day School from September 2020 until February 2022, when Landsman unilaterally enrolled him at the International Academy for the Brain ("iBrain"), a private school (A51).

In August 2020, J.L.'s committee on special education (CSE) determined that J.L. was eligible for special education as a preschool student with a disability and developed an IEP for the 2020-21 school year (A51). The CSE convened an annual review in August 2021 and recommended substantially the same IEP plan for the 2021-22 school year (*id.*). J.L.'s IEPs for both years included special education classes, speech-language therapy (SLT), occupational therapy (OT), physical therapy (PT), a 1:1 aide, and a speech generating device (Certified

Administrative Record ("R") 244-45, 259).[1] The IEPs also recommended transportation accommodations in the form of wheelchair access, a 1:1 bus paraprofessional, and limited travel time (R247, 265). Landsman requested a shorter bus route for J.L. during the 2020-21 school year, which the Department granted (R328).

On February 4, 2022—in the middle of the school year—Landsman entered into a contract with iBrain to enroll J.L. there from February to June of that year (R135-42). Landsman withdrew J.L. from Stepping Stones without providing the requisite 10-business-day written notice to the Department, and J.L. began attending iBrain on February 8, 2022 (A51).

In April 2022, the CSE convened to develop an IEP for J.L. for the upcoming 2022-23 school year (A51). But on June 17, 2022—more than four months after unilaterally enrolling J.L. at iBrain—Landsman sent a letter to the Department objecting to J.L.'s 2022-23 IEP and stating that she intended to enroll him at iBRAIN for that school year (R225-26).[2]

---

[1] The certified administrative record is located at ECF Nos. 48-1 through 48-16 in the district court docket, though is not part of the Joint Appendix.

[2] The June letter referred to a prior letter, supposedly sent on January 27, 2022 (eight business days before J.L. started at iBrain), in which Landsman ostensibly rejected J.L.'s 2021-22 IEP (R226). But this January 27 letter, if it exists at all, does not appear anywhere in the record, and Landsman identified no exception to Federal Rule of Evidence 1002 that would permit consideration of its contents. *See*

*(cont'd on next page)*

## C. The administrative proceedings

### 1. The mother's due process complaint and evidentiary submissions to the IHO

On October 18, 2022, Landsman filed a due process complaint alleging that the Department denied J.L. a FAPE during the 2020-21, 2021-22, and 2022-23 school years (R99). Among other things, she asked to be reimbursed for J.L.'s private school tuition for 2022-23, as well as the roughly four-month portion of the 2021-22 school year when J.L. attended iBrain (R110). Her complaint did not allege that she gave ten business days' written notice of her rejection of J.L.'s 2021-22 IEP, or of her intent to enroll him in private school that year, and no copy of such notice was included in her evidentiary submissions.

Landsman accompanied her due process complaint with an affidavit in which she alleged that J.L.'s 2020-21 and 2021-22 IEPs were deficient in several respects (R326-28). But she provided little evidence that she notified the Department about any of these concerns—even informally—and submitted no evidence that she did so in writing.

_____

*Cutler v. Stop & Shop Supermarket Co., L.L.C.*, 513 F. App'x 81, 83 (2d Cir. Mar. 7, 2013) (summary order) ("Under Federal Rule of Evidence 1002, 'an original writing, recording, or photograph is required to prove its content' unless some exception applies) (brackets omitted). Moreover, as explained below, when Landsman belatedly attempted to introduce a document that that she claimed was her ten-day notice for the 2021-22 school year, it was dated February 2, 2022—not January 27, 2022 (*infra* at 10-11; R63, 70-71).

For instance, Landsman alleged that, at the 2020 IEP meeting, she asked for J.L. to be assigned both a 1:1 nurse and a 1:1 paraprofessional, and that the Department rejected this request the ground that they could not provide both (R327). But there is no evidence that she raised this issue the review meeting the following year, or that she voiced any other concerns either at the 2020 or 2021 meeting. Additionally, according to her affidavit, Landsman asked for a greater frequency and duration of services, inquired about why J.L. was supposedly not assigned a 1:1 nurse or paraprofessional in the 2020-21 school year, and requested a nurse for the 2021-22 school year (R327-28). But her affidavit did not specify when, where, or with whom those issues were raised. Finally, in her affidavit, Landsman faulted the Department for not recommending assistive technology, for not having air conditioning on J.L.'s bus, and for "gaps" in J.L.'s services due to the COVID-19 pandemic (R327-28). But there is no evidence she raised these issues with the Department at all before withdrawing J.L. from Stepping Stones.

In addition to seeking tuition reimbursement, Landsman sought an order directing the Department to fund an independent educational evaluation (IEE) and reimbursement for "related services" such as OT, PT, SLT, and aqua therapy that Landsman alleged she paid for out of pocket (R102, 110-11).

### 2. The IHO's denial of reimbursement for the 2021-22 school year due to Landsman's failure to prove written ten-day notice

The IHO conducted a hearing in February 2023 (R346-413). The Department did not appear. Before receiving any testimony, the IHO walked through each exhibit one by one, and Landsman confirmed through her attorney that the record was complete and there were no other documents she wished to submit (R354-56).

Landsman testified about J.L.'s medical needs, outside services she arranged for him, and his educational progress at iBrain (R370-74). After her testimony, the IHO asked counsel to address the lack of a written ten-day notice for the 2021-22 school year (R383). Landsman's attorney responded, in sum, that the notice was not "mandatory" and was simply "one way to do it ... not the exclusive way" (R385-86).

Counsel was permitted recall Landsman to testify on the notice issue (R387). After being recalled, Landsman testified that she informed the school director in January 2022 that she would be moving J.L. to iBrain (R411). Landsman did not testify that she provided such notice in writing, that she told the Department she was withdrawing J.L. because of specific concerns about his IEP, or that she intended to seek public reimbursement for the cost of J.L.'s private schooling.

The IHO issued a decision granting reimbursement for the 2022-23 school year, but not the 2021-22 school year (A41). As to the first two *Burlington-Carter* factors, the IHO found that J.L. was denied a FAPE and that unilateral placement at iBrain was appropriate (A34-35). But, as to the third factor, the IHO denied reimbursement for the 2021-22 school year based on Landsman's failure to offer "any evidence that she provided the Department with prior written notice of her intent to unilaterally place" J.L. at iBrain (A37). The IHO observed that Landsman submitted a ten-day notice in June 2022 for the 2022-23 school year, which "clearly indicate[d] [her] awareness of and ability to comply with the statutorily required notice mandates" (*id.*). And the IHO further found that Landsman was not excused from complying with the ten-day notice requirement under 20 U.S.C. § 1412(a)(10)(C)(iv) (A37). Finally, the IHO denied Landsman's requests for reimbursement for related services and funding of an IEE (A38-40).

### 3. The SRO's determination

Landsman appealed the IHO's determination to an SRO. In her request for SRO review, Landsman claimed—for the very first time—that she gave written notice of her intent to enroll J.L. at iBrain in February 2022, but that this document was "inadvertently not included in [her] Disclosure Packet" (R63-64; *see* R70-71). She did not address the fact

that this putative "ten-day notice" was dated February 2, 2022—only four business days before J.L. enrolled at iBrain (R70).

The SRO declined to disturb the IHO's determination denying tuition reimbursement for the 2021-22 school year (A70). Acknowledging the documentary evidence introduced for the first time in an administrative appeal will generally not be considered if it could have been presented at the impartial hearing, the SRO found no basis to depart from the general rule (A68). The SRO doubted Landsman's explanation that the February 2 letter was omitted because of an "inadvertent mistake," as the IHO specifically asked about the ten-day notice and Landsman's counsel responded only by arguing that such notice was unnecessary (R69). The SRO also noted that, when Landsman was recalled to testify, she said nothing about written notice but merely claimed that she spoke to the director of the school (R69). Finally, the SRO affirmed the denial of funding for an IEE and reimbursement for related services for the 2020-21 and 2021-22 school years (A63-67, 71-73).

### D. The district court's decision upholding the SRO's determination

Landsman filed this action seeking to overturn the SRO's decision denying reimbursement due to her disregard of the IDEA's notice requirement (A11-27). The parties cross-moved for summary judgment

11

(Dist. Ct. ECF Nos. 36-37, 40-42, 45-46) after agreeing to forgo discovery and rely solely on the administrative record (A78; Dist. Ct. ECF No. 32 at 2). In a thorough opinion canvassing the administrative record and carefully considering the parties' arguments, the district court denied Landsman's motion and granted the Department summary judgment dismissing the action (A75-87).

The court first agreed with the SRO's determination not to consider Landsman's belatedly proffered February 2, 2022 letter (A79-81). Landsman's failure to introduce this letter at the impartial hearing was "inexplicable," the court reasoned, as "the IHO asked [her] numerous times whether evidence of written notice existed, and [she] failed to provide an affirmative answer" (A79-80). Moreover, at the hearing, Landsman was represented by counsel well-versed in the requirements for reimbursement under the IDEA (R80). And even "[a]ssuming the letter is genuine and was actually sent to [the Department] on the date" the document bore, the court reasoned that it would make no difference since it was dated just four business days before J.L. enrolled at iBrain (A80-81).

On the merits, the district court denied tuition reimbursement for the 2021-22 school year (A84-85). Like the IHO, the district court found that Landsman (and her counsel) were "aware that written notice was

required" (A84). Because Landsman unilaterally enrolled J.L. at iBrain without "giv[ing] such notice in a timely way (if at all)," the court held that the equities disfavored reimbursement under the third *Carter-Burlington* prong (A84-85). Finally, the district court upheld the IHO's and SRO's denials of Landsman's requests for reimbursement for related services and funding of an IEE (A85-87).

## STANDARD OF REVIEW
## AND SUMMARY OF ARGUMENT

Courts apply a "circumscribed *de novo* review of a district court's grant of summary judgment" in the IDEA context. *M.W. v. N.Y.C. Dep't of Educ.*, 725 F.3d 131, 138 (2d Cir. 2013). In "reviewing the substantive and procedural adequacy of an IEP," a court "must give due weight to the administrative proceedings, mindful that the judiciary lacks the specialized knowledge and experience necessary to resolve persistent and difficult questions of educational policy." *Ferreira v. Aviles-Ramos*, 120 F.4th 323, 330 (2d Cir. 2024) (cleaned up). But in determining whether to grant or deny tuition reimbursement, a court must engage in an independent balancing of the equities, considering the hearing officers' views only "for their power to persuade." *Id.* at 332-33 (cleaned up).

Under the IDEA, the district court "enjoys broad discretion in considering equitable factors relevant to fashioning relief." *Gagliardo v.*

*Arlington Cent. Sch. Dist.*, 489 F.3d 105, 112 (2d Cir. 2007). This Court's review is more circumscribed—reviewing the district court's grant or denial of reimbursement only for an abuse of that discretion. *See Doe v. E. Lyme Bd. of Educ.*, 790 F.3d 440, 448 (2d Cir. 2015). So long as the decision below was "within the range of permissible decisions" and not based on an error of law or a "clearly erroneous" factual finding, it will not be disturbed. *Ferreira*, 120 F.4th at 330 (cleaned up).

The district court properly found that equitable considerations did not support reimbursing Landsman for the few months in which J.L. attended private school in the 2021-22 school year. It is undisputed that Landsman did not give the notice required by the IDEA ten business days before unilaterally enrolling J.L. at iBrain. Because of her unexcused failure to provide such notice, "reimbursement … may be reduced or denied[.]" 20 U.S.C. § 1412(a)(10)(C)(iii). The district court therefore had discretion to deny reimbursement here.

Indeed, as this Court has explained, the ten-day notice period "gives school district an opportunity to discuss with parents their objections to the IEP and offer changes," which may obviate the need for public funding of the child's private education. *Bd. of Educ. of Yorktown Cent. Sch. Dist.*, 990 F.3d 152, 171 (2d Cir. 2021). Where, as here, the parent subverts this cooperative process by unilaterally enrolling their

14

child in private school without sufficient notice, reimbursement may be denied in full. *See M.C. v. Voluntown Bd. of Educ.*, 226 F.3d 60, 68 (2d Cir. 2000). None of Landsman's counterarguments can overcome this longstanding precedent or the IDEA's clear text.

## ARGUMENT

### THE DISTRICT COURT CORRECTLY GRANTED THE DEPARTMENT SUMMARY JUDGMENT

To begin with, many claims Landman raised below and in the administrative proceedings are not before this Court. As Landsman was reimbursed for the 2022-23 school year (A41-42), any claims with respect to that year are not at issue. And Landsman abandoned her claims for related services and for funding of an IEE by failing to press them in her appellate brief. *See Gordon v. Softech Int'l, Inc.*, 726 F.3d 42, 47 n.1 (2d Cir. 2013). Although Landsman passingly mentions her claim for related services for 2021-22 in her statement of the question presented (App. Br. 2), her "failure to make legal or factual arguments" rebutting the district court's reasons for rejecting this claim (A81-83, 85-86) constitutes an abandonment. *Debique v. Garland*, 58 F.4th 676, 684 (2d Cir. 2023) (cleaned up); *see also Lore v. City of Syracuse*, 670 F.3d 127, 149 (2d Cir. 2012).

That just leaves one issue: whether the district court abused its discretion when it denied tuition reimbursement for the roughly four months in the 2021-22 school year when J.L. attended iBrain. As explained below, it did not.

### A. The district providently denied reimbursement based on the mother's undisputed failure to comply with the ten-day notice requirement.

The district court's denial of reimbursement must be evaluated under the "three-part" *Burlington-Carter* test, under which the court considers: (1) whether the school district's proposed IEP fails to provide the child with a FAPE; (2) whether the private placement is appropriate; and (3) whether the equities support reimbursement. *See Ferreira*, 120 F.4th at 329. Satisfaction of the first two prongs establishes that a parent is eligible for reimbursement at the threshold. *See id.* The third prong focuses on whether reimbursement should be reduced in whole or in part based on the parents' inequitable conduct or "unclean hands." *Id.* at 329-30, 332. Under this test, the parents bear the burden of showing that the equities favor reimbursement. *See W.A. v. Hendrick Hudson Cent. Sch. Dist.*, 927 F.3d 126, 146 (2d Cir. 2019).

The district court denied reimbursement under the third *Carter-Burlington* prong because of Landsman's undisputed failure to give ten

16

business days' notice of her decision to enroll J.L. in private school in early February during the 2021-22 school year (R84-85). To uphold that determination, this Court need look no further than the IDEA's plain text. *See Ziparo v. CSX Transp., Inc.*, 15 F.4th 153, 158 (2d Cir. 2021) ("In interpreting any statute, we start with the plain meaning of the text, and absent any ambiguity, we end there too.") (cleaned up).

Specifically, under the IDEA, "reimbursement … may be reduced or denied," 20 U.S.C. § 1412(a)(10)(C)(iii), unless the parent gives 10 business days' written notice before withdrawing their child from public school, *see id.* § 1412(a)(10)(C)(iii)(I)(bb). And not just any written notice will do; the notice must state that the parent "reject[s] the placement proposed by the public agency to provide a [FAPE], including stating their concerns and their intent to enroll their child in a private school at public expense[.]" 20 U.S.C. § 1412(a)(10)(C)(iii)(I)(aa); *see id.* § 1412(a)(10)(C)(iii)(I)(bb) (requiring the ten-day notice to set forth "the information described in item (aa)").

The Supreme Court has clarified that a parent's failure to provide this notice is relevant to—and often dispositive of—whether they acted inequitably for purposes of the third prong of the *Burlington-Carter* test. *See Forest Grove Sch. Dist. v. T.A.*, 557 U.S. 230, 247 (2009) ("Courts retain discretion to reduce the amount of a reimbursement

award if the equities so warrant—for instance, if the parents failed to give the school district adequate notice of their intent to enroll the child in private school."). As this Court explained, "parents cannot, in fairness, expect to recover for expenses they incurred prior to contacting the school board about their dissatisfaction with their child's IEP." *M.C.*, 226 F.3d at 69 (cleaned up). Thus, this Court has reiterated time and again that "reimbursement is barred where parents unilaterally arrange for private educational services without ever notifying the school board of their dissatisfaction with their child's IEP." *Ferreira*, 120 F.4th at 330 (cleaned up); *accord C.S.*, 990 F.3d at 159; *Frank G. v. Bd. of Educ.*, 459 F.3d 356, 376 (2d Cir. 2006); *M.C.*, 226 F.3d at 68.[3]

This ten-day notice is critical to the proper functioning of the IDEA's statutory scheme. If a parent believes their child's IEP to be inadequate, they must notify the school district of that fact well enough in advance for the district to "reassess the IEP and cure any deficiency," thus avoiding the need for taxpayer funding of private school tuition.

---

[3] Other circuits, too, uniformly recognize that a district court may deny reimbursement where the parent fails to provide adequate notice under the IDEA. *See Leggett v. Dist. of Columbia*, 793 F.3d 59, 69 (D.C. Cir. 2015); *R.H. v. Plano Indep. Sch. Dist.*, 607 F.3d 1003, 1016 (5th Cir. 2010); *C.H. v. Cape Henlopen Sch. Dist.*, 606 F.3d 59, 72 (3d Cir. 2010); *Ashland Sch. Dist. v. Parents of Student E.H.*, 587 F.3d 1175, 1184 (9th Cir. 2009); *Loren F. v. Atlanta Ind. Sch. Sys.*, 349 F.3d 1309, 1318 (11th Cir. 2003); *Berger v. Medina City Sch. Dist.*, 348 F.3d 513, 523-25 (6th Cir. 2003); *Rafferty v. Cranston Pub. Sch. Comm'n*, 315 F.3d 21, 27 (1st Cir. 2002).

*C.S.*, 990 F.3d at 159-60. The ten-day notice period thus "give[s] the district a meaningful opportunity to minimize its expenses by developing its own IEP that would provide the child with a FAPE," *J.S. v. Scarsdale Union Free Sch. Dist.*, 826 F.Supp.2d 635, 672 (S.D.N.Y. 2011) (cleaned up), and § 1412(a)(10)(C)(iii) "establish[es] a powerful incentive to give such notice by providing that reimbursement may be 'reduced or denied' if parents fail to follow this procedure," *C.S.,* 990 F.3d at 159. This incentive structure promotes the objectives Congress had in mind when it passed the 1997 amendments to the IDEA: to "encourage school districts and parents to ... cooperate in developing an appropriate IEP," *Forest Grove*, 557 U.S. at 242, and to "control government expenditures for students voluntarily placed in private schools," *Greenland Sch. Dist. v. Amy N.*, 358 F.3d 150, 159 (1st Cir. 2004) (citing H.R. Rep. 105-95, at 91-92 (1997)), *abrogated on other grounds by Forest Grove*, 557 U.S. 230.

Here, as the IHO, the SRO, and the district court all found, Landsman failed to comply with this notice requirement (A37, 70, 84), a point Landsman herself does not dispute. Although she testified that she spoke to the school director in January 2022 (R411), notice under the IDEA must be in writing. *See* 20 U.S.C. § 1412(a)(10)(C)(iii)(I)(bb). And that aside, it was not enough for Landsman to notify the Department

that she was placing J.L. in private school; she had to state that this was *because* of her objections to J.L.'s IEP, and explain her specific "concerns" so that the Department could try to rectify them. *Id.* § 1412(a)(10)(C)(iii)(I)(aa), (bb).

The IDEA already enumerates circumstances in which Congress deemed it inequitable to reduce or deny reimbursement for failure to observe the notice requirement, 20 U.S.C. § 1412(a)(10)(C)(iv), such as where compliance "would likely result in physical harm to the child," *id.* § 1412(a)(10)(C)(iv)(I)(cc). The IDEA also lists circumstances in which a court "may," in its "discretion," excuse a parent's failure to abide by the notice requirement. *Id.* § 1412(a)(10)(C)(iv)(II). But none of these mandatory or discretionary exemptions to the notice requirement apply here, as the IHO found (A37), and Landsman forfeited any challenge to that finding by not raising it on appeal. *See Lore*, 670 F.3d at 149.[4]

Moreover, as the district court and the IHO both observed, Landsman's conduct was especially unreasonable because there is no dispute that she was aware of her statutory notice obligation (A37, 84).

---

[4] To the extent the IHO found that complying with the notice requirement would not jeopardize J.L.'s health or safety (A37), *see* 20 U.S.C. § 1412(a)(10)(C)(iv)(I)(cc), (II)(bb), that conclusion is entitled to deference because it implicates the IHO's "specialized knowledge and experience" and concerns the "substantive adequacy" of the child's educational plan, *Ferreira*, 120 F.4th 331 (cleaned up), rather than the equitableness of the parent's conduct, *cf. id.* at 332.

Landsman was represented by a law firm that specializes in IDEA litigation (A80) and served a ten-day letter in June 2022 seeking reimbursement for the 2022-23 school year (A37, R225-26). But she never explained why she did not serve timely notice seeking reimbursement for the 2021-22 school year. Indeed, by Landsman's own account, her current counsel represented her as of February 2022 (R63, 70), yet she still failed to submit timely notice.

Landsman argues that she was equitably entitled to reimbursement because she provided written notice on February 2, 2022 (App. Br. 28; R70-71). But even if Landsman sent a letter on that date, it would fall short of the statutory requirement because she sent it only four business days before she enrolled J.L. at iBrain. *See* 20 U.S.C. § 1412(a)(10)(C)(iii)(I)(bb) (requiring notice to be given "10 business days" in advance).

That aside, the purported February 2 letter lies outside the evidentiary record on which Landsman's claim must be decided. Both the SRO and the district court declined to admit it into evidence (A68-70, 79-81), and Landsman does not argue on appeal that those evidentiary rulings were error—thus abandoning the argument. *See Debique*, 58 F.4th at 684. In any case, the SRO and the district court appropriately excluded this document, as Landsman offered no excuse for her failure to present

it at the hearing. Her counsel confirmed at the hearing that the record was complete (R356), and neither Landsman nor her counsel mentioned this letter when the IHO directly asked them about prior written notice (R385-86, 411).

Given Landsman's failure to provide the ten-day notice required by the IDEA, the district court properly denied reimbursement.

### B. Landsman's counterarguments are unavailing.

In response to this straightforward conclusion, Landsman attacks the district court's decision from multiple angles. But none of her arguments warrant reversal.

### 1. Landsman misconstrues the *Burlington-Carter* framework.

First, Landsman argues that, if a parent establishes that their child was denied a FAPE and that private school placement was appropriate, then they are "entitled to reimbursement—period" (App. Br. 16; *see also id.* at 15, 17, 18). That approach could not be more wrong. Once the first two *Burlington-Carter* prongs are established, the court "*must* consider" whether other equitable factors, "including the notice provided by the parents," warrant reduction or denial of reimbursement. *Forest Grove*, 557 U.S. at 247 (emphasis added).

Walking back her own claim, Landsman concedes that satisfying the first two *Burlington-Carter* prongs does not automatically warrant reimbursement (App. Br. 15). She nonetheless asserts that reimbursement should be denied only "in rare, extreme cases" (App. Br. 15; *see id.* at 18). That standard, however, finds no support in this Court's precedents. It also contradicts the IDEA itself, which imposes a lower standard of "unreasonableness" as a criterion for denying reimbursement, 20 U.S.C. § 1412(a)(10)(C)(iii)(III), and unqualifiedly permits courts to deny reimbursement where a parent fails to provide the required ten-day notice, *see id.* § 1412(a)(10)(C)(iii)(I)(bb), as Landsman did here.

Landsman also seizes on a line from the district court's decision that "the first [*Carter-Burlington*] prong must be weighed against the third" (A84) to argue that the court committed reversible error (App. Br. 16). It did not. While Landsman is correct that the *Burlington-Carter* factors are self-contained, the district court was simply responding to Landsman's misguided argument that the Department's purported failure to provide a FAPE in and of itself warranted reimbursement (*e.g.* Dist. Ct. ECF No. 40 at 16). By any fair reading, the district court did not conflate the *Burlington-Carter* factors, but properly denied Landsman's claim under the third factor (A84 (concluding that "the equities weigh against [Landsman]")).

23

## 2. The district court did not err by treating Landsman's failure to provide notice as dispositive.

Next, Landsman argues that the district court did not meaningfully weigh the equities because it only considered one factor: her unexcused disregard of the ten-day notice requirement (App. Br. 19-28). But again, both the IDEA's text and this Court's precedents permit a district court to deny reimbursement on that ground alone. *See* 20 U.S.C. § 1412(a)(10)(C)(iii) & (I)(bb) ("The cost of reimbursement … may be reduced or denied" if the parent "did not give written notice" as set forth in the statute); *Frank G.*, 459 F.3d at 376 ("[R]eimbursement is barred where parents unilaterally arrange for private educational services without ever notifying the school board of their dissatisfaction with their child's IEP.").

Other circuits have, likewise, held that reimbursement may be denied even where the lack of a ten-day notice is the only factor militating against reimbursement under the third *Burlington-Carter* prong. *See, e.g., R.H. v. Plano Ind. Sch. Dist.*, 607 F.3d 1003, 1017 (5th Cir. 2010) ("R.H. is barred from receiving reimbursement for private summer preschool tuition, because he did not give proper notice."); *Berger v. Medina City Sch. Dist.*, 348 F.3d 513, 523 (6th Cir. 2003) (affirming denial of reimbursement "for the separate and independent reason that

24

plaintiffs failed to inform defendant that they objected to the IEP before removing [the child] from public school"); *Ms. M. v. Portland Sch. Comm'n*, 360 F.3d 267, 272 (1st Cir. 2004); *Rafferty v. Cranston*, 315 F.3d 21, 27 (1st Cir. 2002); *W.D. v. Watchung Hills Reg'l High Sch. Bd. of Educ.*, 602 F. App'x 563, 567-68 (3d Cir. Mar. 6, 2015) (rejecting as "unpersuasive" the plaintiff's argument "that the District Court erred by treating his inadequate notice of removal as a complete bar to his reimbursement claim").

Landsman cites no contrary cases. The few she cites in which this Court held that the equities favored reimbursement only undermine her argument, since the parents in those cases *did* provide timely notice (unlike Landsman here). *See T.K. v. N.Y.C. Dep't of Educ.*, 810 F.3d 869, 874 (2d Cir. 2016); *C.F. v. N.Y.C. Dep't of Educ.*, 746 F.3d 68, 74 (2014); *M.H. v. N.Y.C. Dep't of Educ.*, 685 F.3d 217, 254 (2d Cir. 2012). Her other cases simply confirm that courts must engage in *some* equity-balancing under *Burlington-Carter*'s third step, *see Reyes ex rel. R.P. v. N.Y.C. Dep't of Educ.*, 760 F.3d 211, 222 (2d Cir. 2014); *A.P. v. N.Y.C. Dep't of Educ.*, 2024 U.S. App. LEXIS 4302, at *5 (2d Cir. Feb. 26, 2024) (summary order), which the district court did here by considering Landsman's failure to give adequate notice, *see Forest Grove*, 557 U.S. at 247. Ultimately, Landsman cannot find a single decision—from this

or any other circuit—holding that it a district court abused its discretion by denying reimbursement where the parent, like Landsman, failed to comply with the IDEA's ten-day notice requirement.

Finally, Landsman argues at length that the Department's purported failure to provide a FAPE, in and of itself, tilts the equities in favor of reimbursement (App. Br. 23-27). But this impermissibly conflates the first and third prongs of the *Burlington-Carter* analysis, as the district court recognized (A84). Whereas "the first step of the *Burlington/Carter* test" concerns "the substantive and procedural adequacy of an IEP," the "the third step" focuses on whether the parents and the school failed to cooperate in resolving issues with the IEP—such as whether the parent "fail[ed] to timely inform the school district of [their] objections to the IEP." *Ferreira*, 120 F.4th at 330, 332. As the third step is essentially an inquiry into whether the parties have "unclean hands," it is logically distinct from the "persistent and difficult questions of educational policy" that animate the inquiry into whether the child was afforded a FAPE. *Id.* at 330, 332 (cleaned up); *see also Berger*, 348 F.3d at 525 (school district's failure to comply with IDEA requirements "will not relieve plaintiffs of the requirement that they provide notice under the statute"); *W.D.*, 602 F. App'x at 568 (IDEA

26

allows denial of reimbursement if a parent does not provide timely notice of removal, regardless of "the merits of [their] FAPE claim").

### 3. The district court did not improperly defer to the IHO or SRO.

Landsman next argues that the district court improperly deferred to the IHO and the SRO, contrary to this Court's recent decision in *Ferreira* (App. Br. 29-31). She is mistaken.

In *Ferreira*, this Court held, as a matter of first impression, that the "substantial deference" typically afforded state administrative officials in IDEA proceedings "is inapplicable to the equitable balancing called for at the third step of the *Burlington/Carter* test." 120 F.4th at 332. But in the same opinion, this Court held that the district court "neither improperly deferred to the IHO and SRO's view of the equities nor abused its discretion in concluding that the equities disfavored reimbursement." *Id.* at 333. That was so even though the district court "defer[red] to [the SRO's] decision" since "the IHO and SRO agree[d] as to the equitable considerations disfavoring reimbursement." *Id.* (quoting *Ferreira v. N.Y.C. Dep't of Educ.*, 2023 U.S. Dist. LEXIS 32032, at *20 (S.D.N.Y. Mar. 14, 2023)).

Landsman cannot meaningfully distinguish the district court's opinion below—issued before this Court decided *Ferreira*—from the one

27

this Court affirmed in *Ferreira* itself. In reciting the standard of review here, the district court applied "a modified *de novo* standard" and stated that "[c]ourts must defer to the IHO's and SRO's determinations regarding procedural as well as substantive issues" (A78) (internal quotation marks omitted). But, the court clarified, this deference meant that courts must be "mindful that the judiciary generally lacks the specialized knowledge and experience necessary to resolve persistent and difficult questions of educational policy" (A78 (quoting *T.Y. v. N.Y.C. Dep't of Educ.*, 584 F.3d 412, 417 (2d Cir. 2009))—a point *Ferreira* itself reinforced, *see* 120 F.4th at 330. Indeed, unlike the district court's opinion in *Ferreira*, *cf.* 2023 U.S. Dist. LEXIS 43032, at *20, the district court here did not invoke administrative deference in connection with its discussion of the equities. Instead, in analyzing whether Landsman was entitled to tuition reimbursement, the court simply decided for itself that "the equities weigh against [Landsman]" (A84). Thus, as in *Ferreira*, district court's opinion shows that it applied the proper standard of review.

### 4. Landman's failure to provide adequate notice was not harmless error.

Finally, Landsman cuts out of whole cloth a novel "harmless error" standard that no circuit has endorsed (App. Br. 31). As her only source

of authority for this rule, she quotes a line of dictum from a report and recommendation adopted by a district court outside of this circuit (App. Br. 31). *See M.G. v. Dist. of Columbia*, 246 F.Supp.3d 1, 13 (D.D.C. 2017) ("When a school district fails to show any substantive harm caused by a parent's violation of the notice provision, a court may not deny reimbursement on the basis of notice alone."), *report and recommendation adopted*, 2017 U.S. Dist. LEXIS 48461 (D.D.C. Mar. 31, 2017). That dictum was unrelated to the actual issue presented in *M.G. See* 2017 U.S. Dist. LEXIS 48461.[5]

To the extent *M.G.* suggests that a lack of adequate notice is presumptively harmless, it conflicts with this Court's precedent, *see M.C.*, 226 F.3d at 68, and the IDEA's ten-day notice provision itself, *see* 20 U.S.C. § 1412(a)(10)(C)(iii) (I)(bb), which Congress enacted precisely to "clarify the amount of parental cooperation required" for reimbursement, *see Greenland*, 358 F.3d at 159; *see* 20 U.S.C. § 1412(a)(10)(C)(iii)(I)(bb). Moreover, contrary to her intimation that the Department must affirmatively demonstrate prejudice (App. Br.

---

[5] Landsman's brief gives the misleading impression that these words were authored by then-Judge Ketanji Brown Jackson (App. Br. 31). Instead, this dictum comes from the report and recommendation that then-Judge Jackson adopted in a memorandum that does not refer to this passage.

31), it is Landsman who bears the burden of showing that the equities work in her favor. *W.A.*, 927 F.3d at 146.

In any case, Landsman's failure to provide adequate notice was not harmless. Contrary to her argument, the record does not show that Landsman "alert[ed] the DOE to the deficiencies of J.L.'s placement" (App. Br. 32). With respect to many of the alleged deficiencies she complains of—such as the school's failure to recommend assistive technology, the alleged lack of air conditioning on J.L.'s bus, and so-called "gaps" in service due to COVID-19 (R327-28)—there is simply no evidence that Landsman ever notified the Department of her concerns before pulling J.L. out of public school, in writing or otherwise.

Landsman attests that she "advocated for," "requested," and "inquired" about certain other services (R327-28). But the IDEA does not guarantee "everything that might be thought desirable by loving parents," *Walczak v. Florida Union Free Sch. Dist.*, 142 F.3d 119, 132 (2d Cir. 1998) (cleaned up), and "there is a difference between voicing general dissatisfaction and formally rejecting an IEP," *Loren F.*, 349 F.3d at 1317; *see also R.H.*, 607 F.3d at 1009, 1016 (affirming denial of reimbursement for summer private-school tuition where parents "expressed concern" that child "needed summer school" but did not give formal ten-day notice). Here, by not giving the Department sufficiently timely and

30

specific notice of her belief that J.L. was not receiving a FAPE, Landsman compromised the Department's ability "to offer changes to the IEP designed to address those objections"—which might have obviated the need for public funding of J.L.'s private-school education. *C.S.*, 990 F.3d at 171.

### C. Landsman is not entitled to reimbursement for related services from the 2021-22 school year.

As noted earlier, Landsman abandoned her request for reimbursement for related services (*supra* at 15). But even if not abandoned, this claim would fail for the reasons set forth in the district court's careful decision.

As the district court found, there was insufficient evidence that these services were "appropriate to [J.L.'s] needs" under the second prong of the *Burlington-Carter* analysis, *C.F.*, 746 F.3d at 76, as they were either not prescribed by a doctor, duplicative of services obtained at J.L.'s school, or otherwise lacked adequate justification in the administrative record (A85). The district court also correctly reasoned that Landsman was not entitled to supplement this evidence with additional documentation that could have been presented at the impartial hearing, given Landsman's failure to persuasively explain why it was not (A81-83). *See M.B. v. N.Y.C. Dep't of Educ.*, 2015 U.S. Dist. LEXIS 145844, at

31

*6 (S.D.N.Y. Oct. 27, 2015) ("The party seeking to supplement the record" must "explain why the evidence was not presented at the administrative level.") (cleaned up).

In any case, Landsman's request for reimbursement for related services suffers from the same defect as her claim for tuition reimbursement: her failure to give the statutorily required ten-day notice. *See* 20 U.S.C. § 1412(a)(10)(C)(iii)(I)(bb). For this separate and independent reason, the district court properly concluded that this failure tilted the equities against Landsman (A86).

# CONCLUSION

This Court should affirm.

Dated:  New York, New York
       March 10, 2025

Respectfully submitted,

MURIEL GOODE-TRUFANT
*Corporation Counsel*
*of the City of New York*
Attorney for Appellees

By: _____

CHASE H. MECHANICK
Assistant Corporation Counsel

100 Church Street
New York, New York 10007
212-356-0841
cmechani@law.nyc.gov

RICHARD DEARING
DEBORAH A. BRENNER
CHASE H. MECHANICK
   *of Counsel*

33

## CERTIFICATE OF COMPLIANCE

I hereby certify that this brief was prepared using Microsoft Word, and according to that software, it contains 6,503 words, not including the table of contents, table of authorities, this certificate, and the cover.

_____
CHASE H. MECHANICK